**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ALICE J. TREZVANT                                                                                    PLAINTIFF

v.                                              No. 4:07CV00056 JLH

AETNA LIFE INSURANCE COMPANY[1]                                                      DEFENDANT

**OPINION AND ORDER**

**I.**

Alice J. Trezvant was employed on the assembly line for Kimberly Clark Corporation from August 8, 1983, until July 7, 1997, when she submitted a claim for short-term disability benefits due to rheumatoid arthritis and joint pain in her pelvis, which required hip replacement surgery in April 1998. The surgery was performed by an orthopaedic surgeon in Conway who is identified in the administrative record only as Dr. Roberts. A note in Aetna's file indicates that this was Trezvant's second hip replacement surgery. The claim for short-term disability benefits was approved. When the short-term disability benefits expired, she applied for and was approved for long-term disability benefits.

Trezvant also was approved for Social Security disability benefits. Aetna's disability benefits plan provides that the benefit payable will be reduced by other income benefits, which includes Social Security disability benefits. When Aetna learned from Trezvant that she had been approved for Social Security disability benefits, it determined that it had overpaid her in the amount of

---

[1] As noted in the answer filed on behalf of Aetna, the Clerk is directed to correct the style of the case to show that "Aetna Life Insurance Company" is the correct party defendant.

$3642.10 and suspended her benefits. A note[2] dated April 24, 1998, says that a letter was sent "to EE"[3] and "BENEFITS SUSPENDED." Although no such letter appears in the administrative record submitted by Aetna, Trezvant attached a copy of the letter to her complaint.

In October 1998, Dr. Roberts's partner, Dr. Benjamin Dodge, issued a report in which he released Trezvant to return to work with the following limitations: "Sedentary job only – No repetitive getting up & down – no standing over 15 min." Aetna's notes also indicate that Trezvant probably is illiterate and that Kimberly Clark refused to accommodate the restrictions placed on her by Dr. Dodge. A note of several telephone calls in 1999, states, in part:

> 042099 - 1123 TCT EE 501 354 1173 STATED THAT SHE IS TXING WITH DR DODGE IN THE SAME OFFICE AS DR ROBERTS....LAST SAW MD IN MARCH...HAVING PROBLEM WITH SHOULDER AND HAS MEDICATION....NEXT APPT FOR HIP IS IN ONE YEAR...STATES THAT SHE GETS SOC SEC AND IS RETIRED FROM KC....L. THOMAS, RN, CCM/CHICAGO/X4160
> 042299-0930 TCT DR DODGE 501 329 1510 S/W BETH/INS...STATED THAT EE WAS RELEASED AT THAT MARCH OV TO SEDENTARY WORK ONLY, NO REPETITIVE GETTING UP AND DOWN, NO STANDING FOR MORE THAN 15 MINUTES....L. THOMAS, RN, CCM/CHICAGO/X4160 ******RECERT*****4/22/99.....CERT 183...LDC 9/30/99...TDC 816(CORRECTION TDC)....SOC SEC PRIM...MED RETIRED...RRTW SEDEN ONLY...KC DID NOT ACCOMMODATE....EE REFUSED REHAB...L.THOMAS, RN, CCM/CHICAGO/X4160

These notes indicate that Trezvant told an Aetna representative on April 20, 1999, that she saw Dr. Dodge in March, that Dr. Dodge was in the same office as Dr. Roberts, that she was having problems with her shoulder, and that her next appointment for her hip was in a year. These notes also indicate that the Aetna representative spoke with a person in Dr. Dodge's office on April 22, 1999, and learned that Dr. Dodge had released her to work subject to the same restrictions as he had imposed

---

[2] All of these notes appear in a database entitled "eTUMS Event Profile Report - Disability."

[3] Which the Court takes to mean "eligible employee."

in October 1998. Aetna's notes say that it continued to certify Trezvant as disabled with her benefits suspended due to overpayment until the fall of 1999.

A note dated September 20, 1999, states:

> tcf ee at home seeing dr. dote. (she is not sure of spelling) ... same # as dr. roberts .. retired from kc .... last ov last year october .... stated prn ... no recent appt ... has not seen apo in over a year ... not receiving any checks from aetna ... explained to ee to be on disability needs to be seen by doctor ... will close file.

A note dated September 24, 1999, states, "termed claim due to no tx md/eff 10-1-99/benefit still suspended."

Although Aetna construes the note dated September 20, 1999, to mean that Trezvant had not seen a doctor in more than a year, the fifth page in the administrative record is the report from Benjamin M. Dodge, M.D., dated March 18, 1999, stating that Trezvant was seen in the office that date. Dr. Dodge's letterhead states that his telephone number is (501) 329-1510, which is the same number as the number reflected in Aetna's notes as the telephone number for Dr. Roberts. That memorandum repeated the limitations stated in a report from Dr. Dodge dated October 22, 1998, pursuant to which Aetna had determined that Trezvant continued to be disabled. Furthermore, a note dated April 29, 1999, reflects that Aetna received the March 18, 1999, memorandum. And, as noted above, Aetna's notes show that a representative learned of the March 18, 1999, visit to Dr. Dodge and his restrictions on her work during telephone calls on April 20, 1999, and April 22, 1999.

The next entry in the record is a note dated March 9, 2001, which states:

> TCF EE: QUESTIONING WHAT IS THE STATUS OF HER CLAIM ....?? ADV EE PER PN CLAIM WAS CLOSED DUE TO NO TX WITH NO CURRENT DOCTOR, EE ADV SHE HAS BEEN UNDER DOCTOR'S CARE FOR THE LAST 3 YEAR'S?, ADV EE SHE STILL HAS OV/PAYMENT BALANCE OF 3742.94, EE QUESTIONED WHY NO MORE BENF'S HAVE NOT BEEN WITHELD [sic], ADV EE OF NO CERTIFICATION SINCE 9-30-1999 ..... PER EE'S REQUEST TRANSFER CALL TO UM.

The next contacts were in August 2004. Trezvant called Aetna once on August 18, 2004, and three times on August 31, 2004. The notes of those calls state:

> t/c from ee regarding LT benfits, I advised ee LT benefits were denied on 9-20-99. EE asked if she can appeal the denial. I advised ee her appeal period has expired.
>
> OVP INFO:   TCF: CLMT, SHE SAYS SHE WANTED TO KNOW ABOUT HER LTD. ADVISED HER FILE HAS BEEN CLOSED SINCE 1999. SHE SAYS SHE NEVER RECVD ANY LTR STATING THIS. TRANSFERRED CALL TO TAMPA, ALSO SNT EMAIL TO WYD ADVISING OF THIS[.]
>
> TCF EE EE WANTED TO KNOW WHY SHE IS NOT GETTING ANY BENEFITS ADVISED EE THAT THE CLAIM WAS DENIED BACK IN 1999 AND NO FURTHER APPEAL RIGHTS EE STATED SHE DOES NOT KNOW HOW AETNA WILL BE GETTING THEIR MONEY FOR THE OVERPAYMENT . . . .
>
> TCF ee: ee called to ask why her LT claim was denied. Informed ee that the claim was denied due to no treatment from her doctor. Also that the appeal period has expired . . . .

Trezvant commenced this action by filing her complaint on January 24, 2007. Aetna and Trezvant have filed cross motions for summary judgment. Trezvant argues that Aetna's decision to terminate her benefits was an abuse of discretion. Aetna argues that Trezvant's suit is barred by either the limitations period contained in the plan or the applicable statute of limitations. In the alternative, Aetna argues that its termination of Trezvant's benefits was not an abuse of discretion because Trezvant was no longer under the care of a physician as was required by the plan.

## II.

Aetna first argues that Trezvant's cause of action is time barred. Aetna says that her cause of action accrued, at the latest, on March 9, 2001, "when she was unequivocally told that her claim had been terminated in October 1999 because she was no longer under the care of a physician as required by the Plan." Aetna cites a provision in the plan in the administrative record providing for

a three-year contractual limitations period. In the alternative, Aetna argues that the claim is barred by Arkansas's five-year state of limitations applicable to actions enforcing written obligations. *See* ARK. CODE ANN. § 16-56-111(a); *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998) (because ERISA does not contain a statute of limitations for actions seeking to recover plan benefits, the court looks to state law for the most analogous statute of limitations).

Turning first to the argument regarding the contractual period of limitations, the plan that Aetna has placed in the administrative record provides, "No legal action can be brought to recover under any benefit after 3 years from the deadline for requesting a certification of a period of Disability." That provision appears in a booklet describing the Managed Disability Benefit Coverage Plan. The booklet states that it was issued on January 1, 2003, effective January 1, 1996. It appears to be part of a larger document entitled Aetna "Group Accident and Health Insurance Policy," "a Contract Between Aetna Life Insurance Company . . . and Kimberly-Clark Corporation," Policy No. GP-657208-B, with a date of issue of January 1, 2003, to take effect on January 1, 1996. According to the cover page of that document, "[t]his page and those following represent the terms of Policy GP-657208-A. Restated in its entirety effective January 1, 2003." Consistent with the statement that the policy was restated in its entirety on January 1, 2003, the declarations state that the first "policy month" starts on January 1, 2003. The claims procedures described in that plan "apply to claims filed on or after January 1, 2002. Claims filed prior to said date will be subject to the claim procedures in effect prior to that date."

Because the policy placed in the administrative record before the Court was restated in its entirety effective January 1, 2003, and because the claims procedures in effect before January 1, 2002, are nowhere in the administrative record, the Court cannot say that Aetna has met its burden

of proving that the three-year period of limitations actually is part of the contract in effect during the years 1999 through 2001.[4]

Furthermore, the contractual period of limitations that is in the contract begins to run "from the deadline for requesting a certification of a period of Disability." Aetna argues:

> Trezvant submitted a claim for a period of certified disability on July 9, 1997. (ALIC 0008). Her waiting period expired when she became entitled to monthly LTD benefits on January 12, 1998. (ALIC 0010). Sixty days later, on March 13, 1998, the three year contractual limitations period began to run. (ALIC-Plan 060).

But Aetna certified Trezvant for long-term disability benefits on January 26, 1998. Moreover, Aetna continued to recertify Trezvant for long-term disability benefits every quarter through September 30, 1999. Although the plan in the administrative record has a provision that states, "When Aetna's certification of a period of Disability ends, you may request that Aetna certify an extension," there is no provision that makes a request from the eligible employee a prerequisite to recertification; and Aetna in fact recertified Trezvant every quarter during the relevant period without, so far as the record shows, a request from her. The plan in the administrative record provides, "Written notice of any recertification decision will be sent promptly to you, your Physician and your Employer." Aetna did not comply with that provision of the contract. Because Aetna repeatedly recertified Trezvant for long-term disability benefits without a request from her, and because Aetna never complied with the provision in the plan requiring it to send written notice of a recertification decision, it cannot be that the three-year period of contractual limitations automatically begin to run when Aetna failed to recertify Trezvant for benefits effective October 1, 1999.

---

[4] The plan in the administrative record says that Aetna "may, in its sole discretion, require you to participate in **An Approved Rehabilitation Program**." However, an Aetna note dated February 18, 1999, states that rehabilitation is not mandatory, which indicates that terms of the plan were in fact changed after the plan was restated effective January 1, 2003.

In *Beckham*, the Eighth Circuit said that in a federal question case, and in the absence of a contrary directive from Congress, a plaintiff's cause of action accrues when he discovers or with due diligence should have discovered the injury that is the basis of the litigation. *Id*. The court explained:

> Consistent with the discovery rule, the general rule in an ERISA action is that a cause of action accrues after a claim for benefits has been made and has been formally denied. Thus, a beneficiary cannot successfully argue that he was unaware of an injury after a claim for benefits has been formally denied. Nonetheless, and still consistent with the discovery rule, an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiar[y].

*Id*. (internal citation and quotation marks omitted).

Aetna contends that Trezvant's claim accrued at the latest on March 9, 2001, and so the statute of limitations began to run no later than that date. However, the note of that date does not reflect a clear and unequivocal repudiation by Aetna of the obligation to pay long-term disability benefits to Trezvant. The note of that date reflects that Trezvant asked about the status of her claim and was told that her "claim was closed" due to no treatment with no current doctor, but that Trezvant objected that she had been under a doctor's care for three years. The Aetna representative then told Trezvant that she still had an overpayment balance of $3,742.94. Trezvant questioned why no more benefits had been withheld, and the Aetna representative told her that there had been no certification since September 30, 1999. Then the Aetna representative transferred the call "to UM." The record does not state who or what "UM" is nor what was said after the telephone call was transferred.

In contrast, in August 2004 Aetna representatives expressly informed Trezvant that her claim was denied in 1999 and that her appeal period had expired. That is the kind of clear and unequivocal repudiation of the obligation to pay benefits that will, in the absence of a formal denial of the claim, cause a cause of action to accrue under *Beckham*. Nowhere in the March 9, 2001, note does it reflect that Aetna clearly and unequivocally told Trezvant that her benefits had been denied in 1999 and that her appeal time had already expired. Instead, there was the equivocal statement that her "claim was closed," a phrase that is not defined anywhere in the policy that has been provided to the Court, followed by the erroneous explanation that Trezvant had not been under the care of a doctor, after which there was a discussion of the overpayment balance. That note ends inconclusively with the statement that the call was transferred to some person or some department without any explanation of who said what after the transfer. Again, this is not the kind of clear and unequivocal repudiation of the obligation to pay benefits that will, in the absence of a formal denial of benefits, start the period of limitations to run. *Cf. id*. at 321 (finding clear repudiation where claimants admitted that they were repeatedly informed that they would not receive any benefit credit under the plan); *Wolfe v. 3M Short-Term Disability Plan*, 176 F. Supp. 2d 911, 916 (D. Minn. 2001) (finding that letter stating that claimant was "not entitled to [long-term disability] benefits" was a clear and unequivocal repudiation).

Nor does the fact that Trezvant did not receive payments from Aetna during this time change the conclusion that there was no clear and unequivocal repudiation of the obligation to pay benefits. It may be that, ordinarily, when a recipient of disability benefits ceases to receive checks that cessation is a signal that the payor has terminated the benefits. *Cf. Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004) (holding that cause of action accrued for purposes of the

discovery rule when insurer stopped making payment under annuity contract); *Russell v. Bd. of Tr. of Firemen et al.*, 968 F.2d 489, 493 (5th Cir. 1992) (holding that a plan participant's surviving spouse's "duty to assert any remaining rights in [a pension plan] commenced on the date she stopped receiving checks"). However, in this case, the administrative record reflects that the benefits were suspended because of the overpayment. Even after the note of September 20, 1999, stating "will close file," four days later a note states, "[t]ermed claim due to no tx md /eff 10-1-99/benefit still suspended/diary to TGM to advise." As noted above, in 1998 a letter was sent to Trezvant informing her that her benefits were suspended because of the overpayment. Thus, unlike the typical case, here when Aetna decided that Trezvant was no longer eligible for long-term disability benefits but failed to send her a letter so stating, the fact that she did not receive benefit payments in the ensuing months would not necessarily have caused her to realize that Aetna had denied benefits.

In summary Aetna clearly and unequivocally told Trezvant that her benefits had been denied and the appeal time had expired on August 18, 2004. She filed this complaint on January 24, 2007, less than three years later. Trezvant's complaint is not barred by the period of limitations, whether that period is three years or five years.

### III.

Where a plan gives the administrator "discretionary authority to determine eligibility for benefits," the court should review the administrator's decision for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). The plan in the administrative record gives the administrator discretionary authority to determine eligibility for benefits. Assuming the plan in effect in 1999 contained comparable language, the Court should review Aetna's decision to terminate benefits for an abuse of discretion unless the evidence shows

the existence of a palpable conflict of interest[5] or a serious procedural irregularity that caused a serious breach of the plan administrator's fiduciary duty to Trezvant. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998). To satisfy the second part of this requirement, it must be shown that the conflict or procedural irregularity had some connection to the substantive decision. *Id*. at 1161.

"In determining whether procedural irregularities occurred, we consider whether the plan administrator's decision was made without reflection or judgment, such that it was the product of an arbitrary decision or the plan administrator's whim." *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 772 n.5 (8th Cir. 2006) (internal quotation marks omitted). Examples of such procedural irregularities include instances in which "the plan trustee does not inquire into the relevant circumstances at issue; [or] where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision." *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996).

Here, Aetna's handling of Trezvant's claim was flagrantly deficient. Whether the deficiency is characterized as an abuse of discretion or as a procedural irregularity that justifies a more stringent standard of review, the result is the same: Aetna's decision to terminate Trezvant's benefits will be reversed and this case remanded for reconsideration.

The sole basis for terminating Trezvant's benefits is found in the note dated September 20, 1999, which, for convenience of the reader, will be reiterated here:

> tcf ee at home seeing dr. dote. (she is not sure of spelling) ... same # as dr. roberts .. retired from kc .... last ov last year october .... stated prn ... no recent appt ... has not seen apo in over a year ... not receiving any checks from aetna ... explained to ee to be on disability needs to be seen by doctor ... will close file . . . .

---

[5] Here, there is no allegation or evidence of a conflict of interest.

As a result of this note, Aetna concluded that Trezvant had not seen a medical doctor in the past year, concluded that she was therefore not under the care of a doctor, and terminated her benefits. However, the administrative record shows conclusively that Aetna's conclusion that Trezvant had not seen a medical doctor in the past year was inaccurate. As noted above, the fifth page in the administrative record is a report from Benjamin M. Dodge, M.D., dated March 18, 1999, which stated that Trezvant was seen in his office that day. That letter repeated the limitations stated in a letter from Dr. Dodge dated October 22, 1998, pursuant to which Aetna had determined that Trezvant continued to be disabled. Furthermore, a note in Aetna's records dated April 29, 1999, reflects that Aetna had received the March 18, 1999, letter from Dr. Dodge. Moreover, an Aetna representative had spoken with Trezvant on April 20, 1999, and with Dr. Dodge's office on April 22, 1999, as Aetna's notes reflect. Aetna knew that Dr. Dodge saw Trezvant on March 18, 1999, and knew that he had again released her to sedentary work with no repetitive getting up and down and no standing for more than 15 minutes – which apparently precluded Trezvant from all work for which she had the education and job skills. Moreover, Aetna knew that Trezvant's next appointment for her hip was in March 2000.

The person who wrote the note dated September 20, 1999, presumably did not look at Aetna's records, which, as outlined above, clearly show that Trezvant had seen a medical doctor in the preceding six months. The note of September 20, 1999, reflects Trezvant was "seeing dr. dote. (she is not sure of spelling)." Aetna had in its records the correct spelling of the physician's name, as well as his address and telephone number. Aetna's notes reflect numerous calls to that telephone number to speak with Dr. Roberts or one of his assistants in 1997 and 1998 regarding Trezvant's progress. Those notes also indicate a call to Dr. Dodge's office at the same number on April 22,

1999. However, when the person who placed the call to Trezvant on September 20, 1999, concluded that Trezvant had not seen a medical doctor in over a year, no one from Aetna bothered to call Dr. Dodge's office to ask whether Trezvant was still under his care and, if so, what was her condition.

It appears that the conversation of September 20, 1999, covered the same ground as the conversation on April 20, 1999, but the communication was garbled: Dr. Dodge became Dr. Dote and that Trezvant's next appointment for her hip was in a year became that she had not seen a doctor in more than a year. Whether Trezvant or the Aetna representative caused the information to be garbled cannot be determined with certainty. What can be determined with certainty is that Aetna's file conclusively shows that the September 20, 1999, note is inaccurate. Aetna should never have terminated benefits based on that note.

As noted above, there is no evidence that Aetna ever sent Trezvant a letter to inform her of its conclusion that she was no longer entitled to disability benefits because she had not seen a medical doctor for more than a year. The plan provided in the administrative record states that Aetna would send written notice of adverse benefit determinations. As noted above, that plan appears not to be the one that was in effect in 1999. However, the law requires that every employee benefit plan shall provide adequate notice in writing to any beneficiary whose claim for benefits has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the beneficiary, as well as a reasonable opportunity to the beneficiary for a full and fair review by the fiduciary. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. Aetna did not, apparently, send a notice in writing to Trezvant stating that her benefits had been denied, nor did it give her reasonable opportunity for a full and fair review of the decision.

These procedural irregularities probably justify a de novo review in this case. However, even if Aetna's action were reviewed under an abuse of discretion standard, Aetna's decision must be reversed. Aetna's determination that Trezvant had not seen a medical doctor for more than a year before September 20, 1999, is plainly wrong, and Aetna had in its records at the time evidence to show that that conclusion was plainly wrong. Therefore, Aetna abused its discretion in terminating Trezvant's benefits on that basis.

## IV.

The only issue that remains is the remedy for Aetna's actions. Aetna approved Trezvant for long-term disability benefits on January 12, 1998, under the plan's "own occupation" standard for disability, which lasts for 24 months. Aetna had before it Dr. Dodge's release of Trezvant to sedentary work when it recertified Trezvant for disability benefits on April 22, 1999. There is no evidence in the record that Trezvant's condition had changed when Aetna terminated her benefits on September 20, 1999. This Court has previously held that, where the decision to terminate benefits was not based on any significant change in the information available to the insurer concerning the claimant's medical condition between the granting and the terminating of benefits, the claimant is entitled to a reinstatement of benefits. *Hairston v. Loctite Corp.*, No. 4:05CV01142, 2006 WL 568326, at *8-*9, *11 (E.D. Ark. Mar. 7, 2006). Thus, Trezvant's eligibilty for benefits should be reinstated for the period between September 20, 1999, and January 12, 2000 – the date that Trezvant would have to have met the "any reasonable occupation" standard for disability to continue receiving benefits. Aetna must therefore pay Trezvant $4691.94 plus interest.[6]

---

[6]The Court arrived at that figure in the following manner. Trezvant's monthly benefit was $409.20. Aetna suspended Trezvant's benefits on April 29, 1998, because of a $3,642.10 overpayment. However, Aetna failed to credit the benefits owed Trezvant after April 30, 1998,

As for the period of time after January 11, 2000, the Court cannot conclude from the evidence on the record that Trezvant would have met the "any reasonable occupation" standard for disability and therefore qualified for continued benefits. Thus, this case must be remanded for reconsideration under the "any reasonable occupation" standard for disability. On remand, Aetna must take the necessary steps to ascertain whether Trezvant was disabled from January 12, 2000, until the present and must award or deny benefits accordingly. Aetna must give Trezvant the chance to submit additional information. Aetna must give Trezvant written notice of any adverse benefit determination and an opportunity for a full and fair review or appeal. All of the above must be in accordance with the plan in effect from January 12, 2000, through December 31, 2002, or, if no such plan can be located, in accordance with the plan provided in the administrative record in this case.

---

against the $3,642.10 balance. Aetna therefore owes benefits to Trezvant for twenty months, $8184, and eleven days, $150.04, less the overpayment, $3,642.10, which equals $4691.94. If Aetna had properly been crediting Trezvant's benefits against the $3,642.10 balance, Trezvant would have paid off the overpayment by February 1, 1999.

**CONCLUSION**

The conclusion that Trezvant had not seen a medical doctor in more than a year before September 20, 1999, is plainly wrong and is hereby set aside. Trezvant's motion for summary judgment is GRANTED. Document #14. Aetna's motion for summary judgment is DENIED. Document # 18. This case is REMANDED back to Aetna for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 6th day of August, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE